[Crim. No. 14442. Second Dist., Div. Four. Apr. 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
FELTON FERGUSON, Defendant and Appellant.

## COUNSEL

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**FILES, P. J.**—The defendant was found guilty, by jury verdict, of two counts of first degree burglary (Pen. Code, § 459). The information charged and the jury found that he had been armed with a deadly weapon, to wit, a butcher knife, at the times the offenses were committed. Probation was denied and defendant was sentenced to state prison. He appeals from the judgment.

Approximately 45 minutes before dawn on July 9, 1967, defendant, by forcing bedroom windows, entered two residences on South Hooper Street in Los Angeles belonging to the Page and Anderson families. He took a butcher knife from the kitchen of the Page house, the first house he entered, and kept it until the time of his arrest. Members of both families identified the defendant at the trial. Although the light was dim at that hour, the victims had sufficient opportunity to observe defendant. The police arrived shortly after the burglaries in response to a call by Mr. Page, and apprehended defendant after a short chase. His attempt to dispose of the butcher knife was unsuccessful.

After the officers had handcuffed defendant and placed him in their automobile, Mr. Page, who had been watching from his front porch, approached the vehicle, looked in, and recognized defendant as the man who had been in his house 10 minutes before. One of the officers asked if defendant was the right man, and Mr. Page said he was.

Defendant gave a different account of his actions that night, but the finding of the jury has resolved the factual issue against him.

Defendant first contends that the trial court should have sustained his objection to the testimony of Mr. Page upon the ground that the on-the-scene confrontation violated his right to counsel under the *Wade-Gilbert* rules.[1] This issue was disposed of adversely to the defendant in *People* v. *Colgain* (1969) 276 Cal.App.2d 118, 125 [80 Cal.Rptr. 659], and *People* v. *Levine* (1969) 276 Cal.App.2d 206, 208 [80 Cal.Rptr. 731].

[1]See *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].

We also note that this confrontation was not unnecessarily suggestive or otherwise unfair, so as to deprive the defendant of due process. (See *People v. Floyd* (1970) 1 Cal.3d 694, 714 [83 Cal.Rptr. 608, 464 P.2d 64].)

■ The second issue is whether it was proper to include in the judgment the recital that defendant was armed at the times of the commission of the offenses.

Penal Code section 969c says: "Whenever a defendant is armed with a firearm or other weapon under such circumstances as to bring said defendant within the operation of Section 3024 of the Penal Code relating to certain minimum penalties or of Section 12022 of the Penal Code, the fact that the defendant was so armed may be charged in the accusatory pleading."

That section further provides that the question whether the defendant was armed as alleged must be tried by the jury which tries the issue of guilt. Penal Code section 1213.5 requires that the abstract of judgment shall contain, among other things, "A statement as to whether or not the defendant was armed with a deadly weapon or a concealed deadly weapon when that fact will affect his sentence."

Both section 3024 and section 12022 prescribe punishment for those offenders to whom they apply.

*In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417] held that a defendant convicted of assault with a deadly weapon (a violation of Pen. Code, § 245) could not be subjected to the additional punishment prescribed in section 3024 and in section 3 of the Deadly Weapons Act (now Pen. Code, § 12022). The Supreme Court explained the statutes in these terms (at pp. 750-751): "It is not unreasonable to suppose that the Legislature believed that for felonies in which the use of a gun was not one of the essential factors, such as rape, larceny, and the like, an added penalty should be imposed by reason of the fact that the defendant being armed with such a weapon would probably be more dangerous because of the probability of death or physical injury being inflicted by the weapon. Hence, such a condition would be reasonable grounds for increasing the penalty where felonies are involved which do not include as a necessary element being armed with a pistol. The Legislature has by other acts imposed an increased punishment where the only additional factor, being armed with a deadly weapon, is present. The only difference between a simple assault and one with a deadly weapon is the latter factor. The commission of a simple assault is declared a misdemeanor . . . When there is added to the assault the use of a deadly weapon the punishment is increased to imprisonment in the state prison . . . Briefly, the Legislature has fixed the punishment

for an assault where a deadly weapon is used, a particular crime, and it is not to be supposed that for the same offense without any additional factor existing the added punishment should be imposed. In felonies where a deadly weapon is not a factor in the offense, the additional punishment is imposed by section 3 of the Deadly Weapons Act, because of the additional factor of a deadly weapon being involved."

In *People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], the Supreme Court, following the reasoning of the *Shull* opinion, held that a defendant convicted of first degree robbery, committed while he was armed with a deadly weapon, was not subject to the added punishment prescribed in section 12022. The court pointed out that the Legislature had prescribed a more severe punishment for first degree robbery than for second degree, and that the fact that the defendant was armed was the additional element which raised the offense to the higher degree.[2] The court said (at p. 883) that "since the fact of being armed is essential to the conviction, sections 12022 and 3024 are inapplicable."

The principle of the *Shull* case was also applied in *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 922 [79 Cal.Rptr. 650], where the appellate court struck the finding of armed in a first degree burglary case.

In the case at bench defendant was convicted of first degree burglary.[3] The elements which raise a burglary from second to first degree are, in the alternative, (1) an inhabited house in the nighttime, or (2) an armed burglar, or (3) an assault by the burglar. Each of the burglaries here was of an inhabited house in the nighttime. Hence it was first degree whether or not defendant was armed. The fact that the defendant was armed was not one of the necessary elements of the offenses of which he was convicted. Thus the reasoning of the *Shull* and *Floyd* opinions does not forbid

---

[2]Penal Code section 211a: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, and the robbery of any person who is performing his duties as operator of any motor vehicle, streetcar, or trackless trolley used for the transportation of persons for hire, is robbery in the first degree. All other kinds of robbery are of the second degree."

[3]Penal Code section 460 provides: "1. Every burglary of an inhabited dwelling house, trailer coach as defined by the Vehicle Code, or building committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree. 2. All other kinds of burglary are of the second degree."

the application of section 12022 here.[4] (*People* v. *Perryman* (1967) 250 Cal.App.2d 813, 821 [58 Cal.Rptr. 921].)[5] Since the burglary of an inhabited house at night was a felony "in which the use of a [weapon] was was not one of the essential factors . . . an added penalty should be imposed by reason of the fact that the defendant being armed with such a weapon would probably be more dangerous because of the probability of death or physical injury being inflicted by the weapon." (*In re Shull, supra,* 23 Cal.2d at p. 750.)

■    The remaining question is whether the defendant was properly found to have been armed within the meaning of section 12022. That section as it read at the time here involved (1967) provided that any person who committed any felony "while armed with any of the weapons mentioned in Section 12020" should receive an additional term of imprisonment. The only kind of weapon mentioned in section 12020[6] which could be applicable is "any dirk or dagger."

The instrument which defendant carried on his person was an ordinary kitchen knife, having a wooden handle and a steel blade eight inches long, with a point and one cutting edge.

In *People* v. *Ruiz* (1928) 88 Cal.App. 502 [263 P. 836] the court held that a bayonet, part of which had been filed off, was a "dirk or dagger" within the meaning of the statute. The court said (at p. 504): "A dagger has been defined as any straight knife to be worn on the person which is

---

[4]We note that the *Floyd* opinion is carefully limited to the facts there before the court. That opinion points out that there are alternative ways by which an unarmed person may commit first degree robbery, but in that case the higher degree rested exclusively upon the fact that the defendant was armed (see 71 Cal.2d at p. 881, fn. 1).

[5]Although the *Perryman* opinion appears to conflict with other authority in applying the "armed" penalties to an unarmed confederate (see *People* v. *Tarpley* (1968) 267 Cal.App.2d 852, 856-857 [73 Cal.Rptr. 643]) and in the definition of first degree burglary (see *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 917 [79 Cal.Rptr. 650]) it stands as a square holding that the separate finding of armed is proper where possession of a weapon is not a necessary element of the first degree burglary.

[6]The pertinent part of Penal Code section 12020 reads: "Any person in this State, who manufactures or causes to be manufactured, imports into the State, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, sawed-off shotgun, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition or who carries concealed upon his person any dirk or dagger, is guilty of a felony, and upon conviction shall be punishable by imprisonment in the county jail not exceeding one year or in a state prison for not less than one year nor more than five years."

capable of inflicting death except what is commonly known as a 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing."

In *People* v. *Shah* (1949) 91 Cal.App.2d 716 [205 P.2d 1081] a seven-inch spring blade knife was found to be a "dirk or dagger."

In *People* v. *Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100] the weapon was a part of a baseball bat, which was alleged to be a "billy," one of the weapons proscribed by section 12020. The court recognized that some instruments, useful for peaceful purposes, may under other circumstances constitute dangerous weapons. The opinion said (at p. 621): "Thus we hold that the statute embraces instruments other than those specially created or manufactured for criminal purposes . . . The Legislature thus decrees as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger. Accordingly the statute would encompass the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a 'tough' neighborhood to the scene of a riot. On the other hand the section would not penalize the Little Leaguer at bat in a baseball game."

This reasoning was followed and applied in *People* v. *Deane* (1968) 259 Cal.App.2d 82 [66 Cal.Rptr. 177] which held that the jury would have to decide whether an object which was, in form, the handle of a toolbox, constituted the weapon known as "metal knuckles."

In *People* v. *Forrest* (1967) 67 Cal.2d 478 [62 Cal.Rptr. 766, 432 P.2d 374] the court held that a pocketknife with a six-inch folding blade could not be classified as a "dirk or dagger" because the absence of a lock on its folding blade so greatly limited its effectiveness as a stabbing instrument. The court did not, however, recede from the principle derived from the *Ruiz* and *Shah* cases, that the test of a "dirk or dagger" is its capability for use as a stabbing or cutting weapon. Nor did the opinion cast any doubt upon the *Grubb* principle that an instrument manufactured for a peaceful purpose will be classified as a weapon within the meaning of section 12020 if the circumstances indicate it is being carried as a weapon.

The butcher knife carried by defendant has the characteristics of a stabbing and cutting weapon. It is substantially made, capable of inflicting a fatal wound. The jury was correctly instructed that unless it found that

defendant possessed the knife as a weapon, it must find he was not armed. The verdict of "armed" is supported by the record.

The judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1970.