[Crim. No. 35888. Second Dist., Div. Two. June 9, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS VILLAGREN, Defendant and Appellant.

COUNSEL

Kenneth H. Lewis for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Sandy R. Kriegler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEACH, J.**—After a jury had found appellant guilty of three counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and one count of carrying a concealed dirk or dagger (Pen. Code, § 12020, subd. (a)), the trial court sentenced appellant to state prison. Appellant ap-

peals from the judgment of conviction. He contends that the trial court erred in allowing the prosecution, after the jury had been selected, to amend the information to allege a count of carrying a concealed dirk or dagger. He also attacks the sufficiency of the evidence supporting his convictions on all four counts, and further claims reversible error based on juror misconduct. For reasons which shall be explained below, we reject each of these contentions and affirm the judgment.

## FACTS:

Presuming in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, as we must (*People* v. *Henderson* (1977) 19 Cal.3d 86, 97 [137 Cal.Rptr. 1, 560 P.2d 1180]; *People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]), the relevant facts adduced at trial are as follows: At approximately 12:30 a.m. on November 19, 1978, a group of six people, including appellant, entered the "Round Robin" bar in Glendale. They all wore jackets with emblems indicating their membership in the "Warlocks" motorcycle club, in violation of the bar's dress code. When Jerry Fredericks, employed as a bouncer at the bar, asked the Warlocks members to take off their jackets, one of them replied: "Yeah, when I'm good and ready. I'm going to finish my beer." Shortly thereafter, the group left the bar but returned a couple of minutes later. Someone in the group then hit an unidentified individual over the head with a beer bottle. In the ensuing fight, another member of the group hit Jerry Fredericks, the bouncer, in the face and stomach. Raymon Delgado, a patron, came to Frederick's rescue and overpowered his assailant, only to be stabbed in the side by appellant moments later. Thereafter, Raul Deanda, another patron, saw appellant hit Ramos Sprein, the bar owner's son, in the stomach. As appellant withdrew his hand, Deanda observed a knife in appellant's hand. When Joe Sprein, the bar owner, tried to come to his son's aid, appellant came at the older Sprein with the knife. In an effort to pull the older Sprein away, Deanda was stabbed in the hand by appellant.

While on patrol at 1:45 a.m. near the "Round Robin" bar, Officer Cooper of the Glendale Police Department was "hailed down" by Delgado who was standing outside the bar. Delgado, who was bleeding, pointed to appellant, who was walking away from the bar, and said he was the man who had just stabbed him. Appellant ignored the officer's order to stop. While appellant continued walking towards the rear of the bar's parking lot, the officer saw appellant throw an object, later

identified as a blood-stained knife. Assisted by two other officers, Officer Cooper apprehended appellant minutes later. When appellant removed his jacket during the booking process, Officer Cooper observed an empty knife sheath on the right-hand side of appellant's belt.

DISCUSSION:

1. *Amendment of Information*

After a jury had been selected, the trial court allowed the prosecution to amend the information to allege a count of carrying a concealed dirk or dagger. This, appellant claims, was error because it was not supported by evidence introduced at his preliminary hearing.

 Penal Code section 1009 permits an amendment to an information to add another offense shown by the evidence at the preliminary hearing. (*People v. Hall* (1979) 95 Cal.App.3d 299, 314 [157 Cal.Rptr. 107]; *People v. Spencer* (1972) 22 Cal.App.3d 786, 799 [99 Cal.Rptr. 681]; *Patterson v. Municipal Court* (1971) 17 Cal.App.3d 84, 88 [94 Cal.Rptr. 449].) This has been held not to violate a defendant's constitutional rights. (*People v. Tallman* (1945) 27 Cal.2d 209, 213 [163 P.2d 857].) An amendment to the information may be made as late as the close of trial if no prejudice is shown. (*People v. Witt* (1975) 53 Cal.App.3d 154, 165 [125 Cal.Rptr. 653].) Whether or not to allow an amendment is within the trial court's discretion, and its ruling will not be reversed absent an abuse of discretion. (*Ibid.; People v. Flowers* (1971) 14 Cal.App.3d 1017, 1020 [92 Cal.Rptr. 647].)

The transcript of the preliminary hearing, which has been made a part of the record on appeal, shows that stabbing victims Delgado and Deanda saw a knife in appellant's hand. Thus there was ample evidence adduced at the preliminary hearing of appellant's possession of a knife. The remaining question is whether it was concealed. Nothing in the testimony of Delgado, who appears to have been the first stabbing victim in the fight, indicates that he saw a knife in appellant's hand when appellant came at him. Not until after he had been stabbed did Delgado observe a knife in appellant's hand. Deanda, who witnessed the assault on Delgado, stated merely that he saw appellant punch Delgado in the rib cage; he said nothing about seeing a knife in appellant's hand. All Deanda saw just before the assault on Delgado was a "shank guard," described as a container to hold a knife, on appellant's person. It was only after the incident with Delgado, when appellant went for the youn-

ger Sprein, son of bar owner Joe Sprein, that Deanda observed appellant with "a blade in his hand." The evidence at the preliminary hearing thus indicated that the knife was concealed on appellant's person prior to the stabbing. Under the circumstances, the trial court did not abuse its discretion in permitting the information to be amended by adding a charge of a violation of Penal Code section 12020, subdivision (a), prohibiting the carrying of a concealed dirk or dagger. (*People v. Tallman, supra*, 27 Cal.2d 209, 214.)

*2. Whether Appellant's Knife Was a Dirk or Dagger Within the Meaning of Penal Code Section 12020*

Appellant argues that his conviction for possession of a concealed "dirk or dagger" was improper because the knife he carried was not a "dirk or dagger" within the meaning of section 12020 of the Penal Code.

There is no precise statutory definition of a dirk or dagger. In attempting to define "dirk or dagger," the court in *Bills* v. *Superior Court* (1978) 86 Cal.App.3d 855, 859 [150 Cal.Rptr. 582] noted: "In six appellate decisions we find this quote: 'A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a "pocket-knife." Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)'" (Citations omitted.)

Not every knife is a dirk or dagger. That determination may be a question of fact for the jury to determine. (*People v. Bain* (1971) 5 Cal.3d 839, 851 [97 Cal.Rptr. 684, 489 P.2d 564]; *People v. Cabral* (1975) 51 Cal.App.3d 707, 712 [124 Cal.Rptr. 418].) *Bain* involved a folding knife with a pointed five-inch-long blade with dull beveled sides that could be locked into position when opened manually. Because the knife could be folded, and because a pocket-knife is not considered a dirk or dagger, the *Bain* court held it to be a close question of fact whether the knife was a dirk or dagger. In *People v. Ferguson* (1970) 7 Cal.App.3d 13 [86 Cal.Rptr. 383], the defendant carried an ordinary kitchen knife, having a wooden handle and a steel blade eight inches long, with a point and one cutting edge. (*Id.* at p. 18.) The *Ferguson* court reasoned that because the butcher knife had the characteristics of

a stabbing and cutting weapon, it was properly left for the jury to determine whether it was a dirk or dagger. (*Id.* at p. 19.)

In contrast, in *People* v. *Forrest* (1967) 67 Cal.2d 478 [62 Cal.Rptr. 766, 432 P.2d 374], it was held that an oversized two-bladed pocket-knife was not a dirk or dagger as a matter of law because the blades did not lock into place, thus severely limiting its effectiveness as a stabbing instrument. And in *Bills* v. *Superior Court, supra,* 86 Cal.App.3d 855, 862, the court concluded that a pair of ordinary unaltered barber scissors could not be deemed a "dirk or dagger" because scissors, not having been designed as weapons but only for use as a cutting tool, "are not primarily fitted as a stabbing instrument." The *Bills* court recognized that a pair of barber scissors can be used as a stabbing weapon and as such could inflict a fatal wound. However, as the court emphasized in *Bills,* "a pair of barber scissors *as constructed*" (italics added) does not have the characteristics of a stabbing weapon. (*Id.* at p. 860.)

Thus, as illustrated by the cases discussed above, depending on their characteristics and capabilities for stabbing and cutting, some objects present a question of fact for a jury as to whether they are a "dirk or dagger," whereas others are considered a "dirk or dagger" as a matter of law.

■ Here, Officer Cooper described the instrument he recovered following the stabbings as a "hunting knife." We have viewed the knife. The knife has a three-and-three-fourths-inch-long steel handle and a four-and-three-eighths-inch-long relatively straight blade,[1] with one cutting edge and a slight curve toward the tip. Below is a drawing of the knife.

---

[1]In order to be considered a dirk or dagger, the weapon need not be perfectly straight. Thus, in *People* v. *Cabral* (1975) 51 Cal.App.3d 707, 710-711 [124 Cal.Rptr. 418], the court held that a bedspring, which had not been totally straightened out, was a "dirk or dagger" as a matter of law because it had been designed only for the purpose of stabbing.

We reject appellant's contention that the trial court should have held that as a matter of law the hunting knife was not a "dirk or dagger." To have so held, the trial would have had to find that the knife used in this case had characteristics substantially limiting its stabbing effectiveness. (*People* v. *Forrest, supra*, 67 Cal.2d 478, 481.) Unlike the knife in *Forrest*, which was a folding knife that could not lock into place, thus substantially limiting its effectiveness as a stabbing weapon, the knife involved here has a handguard to prevent the hand from slipping onto the blade. "Knives are ordinarily designed to be used as weapons or tools or both, and as weapons they may be designed as stabbing or cutting instruments or as both." (*Ibid.*) Just as an ordinary kitchen knife has the characteristics of a stabbing and cutting weapon (*People* v. *Ferguson, supra*, 7 Cal.App.3d 13, 19), so has the hunting knife in this case. It is substantially made, and capable of inflicting a fatal wound. It was properly left to the jury to determine whether the knife was a "dirk or dagger." (*Ibid.*) Not only did the jury have an opportunity to actually view the knife, which had been admitted into evidence, but it also was correctly instructed pursuant to CALJIC No. 12.36, that a dirk or dagger is "any straight weapon, designed and fitted primarily for stabbing." In addition, there was evidence before the jury that the knife had been used as a stabbing weapon.

With respect to appellant's concern about "the opportunities for harassment of law-abiding citizens if hunting knives are held illegal under section 12020," the section does not penalize the lawful possession of a hunting knife but only the *concealed* possession thereof as a *weapon*, because this creates an immediate atmosphere of danger. In *People* v. *Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100], the California Supreme Court held that an altered baseball bat, which was taped at the smaller end while heavier at the unbroken end, and which was carried by the defendant in his car, was a "billy," one of the weapons proscribed by Penal Code section 12020. The court recognized that some instruments, useful for peaceful purposes, may under other circumstances constitute dangerous weapons. As the opinion said: "The concomitant circumstances may well proclaim the danger of even the innocent-appearing utensil. The Legislature thus decrees as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger. Accordingly the statute would encompass the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a 'tough' neighborhood to the scene of a riot. On the other

hand the section would not penalize the Little Leaguer at bat in a base-ball game." (*Id.* at p. 621.)

### 3. *Sufficiency of Evidence as to Appellant's Conviction for Assault With a Deadly Weapon*

Appellant contends there is insufficient evidence to support the jury verdict on counts I through III in which appellant was found guilty of assault with a deadly weapon.

■ The test on appeal is not whether the evidence proves guilt beyond a reasonable doubt but whether there is substantial evidence to support the conclusion of the trier of fact. (*People v. Camden* (1976) 16 Cal.3d 808, 812 [129 Cal.Rptr. 438, 548 P.2d 1110]; *People v. Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) As a reviewing court, we must view the evidence in a light most favorable to the judgment. (*People v. Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal. Rptr. 379, 461 P.2d 659].) We do not, however, limit our review to the evidence favorable to the respondent. Not only must we resolve the issue in the light of *the whole record*, rather than limiting our appraisal to isolated bits of evidence selected by the respondent, but we must judge whether the evidence of each of the essential elements is *substantial*: it is not enough for the respondent simply to point to "some" evidence supporting the finding, for not every surface conflict of evidence remains substantial in the light of other facts. (*People v. Bassett* (1968) 69 Cal.2d 122, 138 [70 Cal.Rptr. 193, 443 P.2d 777].) These principles of judicial review have been held by the California Supreme Court to be consistent with *Jackson v. Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781] in which the United States Supreme Court announced a new, constitutionally mandated rule for the review of the sufficiency of the evidence supporting a state criminal conviction challenged in a federal habeas corpus proceeding. (*People v. Johnson* (1980) 26 Cal.3d 557, 575-577 [162 Cal.Rptr. 431, 606 P.2d 738].)

As to counts I and III, victims Deanda and Delgado identified appellant as the man who had stabbed them. ■ When a victim identifies a defendant as the person who stabbed him, such testimony alone is sufficient to support a verdict of guilty on a charge of assault with a deadly weapon. (*People v. Richardson* (1959) 176 Cal.App.2d 238, 239 [1 Cal.Rptr. 306]; *People v. Kersey* (1957) 154 Cal.App.2d 364, 367 [316 P.2d 52].) With respect to count II, witness Joe Sprein testified

that 10 minutes after he had been hit in the side by appellant, he discovered that he had actually been stabbed rather than just merely hit. Moreover, appellant's assault with a knife on Joe Sprein was witnessed by Deanda, who got stabbed in the arm by appellant when, seeing appellant come toward Joe Sprein with a knife, he unsuccessfully tried to ward off the attack upon Joe Sprein. "One witness is sufficient proof of the crime of assault with a deadly weapon if he is believed by the fact finder." (*Ibid.*) In this case, there is nothing inherently improbable in Deanda's testimony. We conclude there was sufficient evidence of appellant's guilt on all three counts of assault with a deadly weapon.

### 4. *Denial of Appellant's Motion for a New Trial*

Appellant contends it was error for the trial court to deny his motion for a new trial which was based on alleged jury misconduct.

■ The determination of a motion for a new trial rests completely within the discretion of the trial court; on appeal, its ruling will not be disturbed unless manifest abuse of discretion appears. (*Rogers v. County of Los Angeles* (1974) 39 Cal.App.3d 857, 863 [114 Cal.Rptr. 540].) In support of his motion for a new trial, appellant submitted an affidavit by defense counsel stating that when he inquired of the jury foreman about a point raised in the defense, namely the fact that appellant's knife had a one-inch-wide blade while the wound inflicted upon Joseph Sprein was only three-quarters of an inch wide, the foreman purportedly told him that he had shown the other jurors his Viet Nam battle scar, which was quite small but which had been inflicted with a large bayonet, to demonstrate that a large weapon could inflict only a small wound.

Evidence Code section 1150 authorizes the use of jurors' affidavits to show objective facts which occurred in the jury room and could have improperly influenced the jury. (*People v. Hutchinson* (1969) 71 Cal.2d 342, 350-351 [78 Cal.Rptr. 196, 455 P.2d 132].) ■ However, a jury verdict may not be impeached by hearsay affidavits. (*People v. Spelio* (1970) 6 Cal.App.3d 685, 690 [86 Cal.Rptr. 113].) In *Spelio*, the defendant presented affidavits from four individuals (the defendant, his attorney, his stepmother, and the codefendant). Each affiant alleged having been told by one particular juror that she had discussed the defendant's testimony with her child and that at least one other jury member had done likewise. In disposing of the issue, we said in *Spelio*:

"Appellant's credibility was crucial to his defense. The out-of-court statement by the jurors' children averred in the affidavits, may well have been a critical factor in appellant's conviction. However, the affidavits submitted at bench contained hearsay thrice and twice removed. Mrs. Tate did not nor did the other jurors, nor did any of the children vaguely referred to make any affidavits." (*Ibid.*)

Under the circumstances, the trial court's denial of appellant's motion for a new trial was proper. (*Ibid.*)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 6, 1980.