[No. G014365. Fourth Dist., Div. Three. Mar. 31, 1994.]

In re VICTOR B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
VICTOR B., Defendant and Appellant.

522

## COUNSEL

Lee Rittenburg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle Davis and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WALLIN, J.**—Victor B. was declared a ward of the court (Welf. & Inst. Code, § 602) after being found in possession of a dirk or dagger in violation of Penal Code section 12020, subdivision (a).[1] He contends the trial court erred in admitting his statement to police that he carried the instrument for "protection" because he had not been advised of his *Miranda*[2] rights. He also contends that as a matter of law the object was not a dirk or dagger. We affirm.

Orange County Sheriff Deputy Jimmy Rubio investigated a complaint that a group of boys were on a bike path throwing rocks at passing vehicles. He saw five male youths on the bike trail whom he recognized as gang members. They were walking quickly away from the street towards a housing tract when Rubio ordered them to stop.

In a patdown search of Victor, Rubio found an object in his left rear pocket. The object, a photocopy of which is attached as appendix "A," consists of 2 three-and-one-half-inch pieces with 1 piece fitting inside the other. The assembled object has finger grips and is five and three-quarter inches long, including a metal point of one and three-eighths inches. Rubio asked Victor why he carried the object. Victor replied, "For protection."

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Victor claims the instrument is a simple automotive repair tool, but presented no evidence regarding its use. Rubio testified the object appeared to have been altered because the metal end which would ordinarily have a hole in it similar to a sewing needle had been sharpened down to a point.

## I

Victor contends his statement that he carried the instrument for protection was obtained in violation of his Fifth Amendment rights and should not have been admitted. We disagree.

*Miranda* requires a suspect be advised of his or her rights when in custody and subjected to interrogation. Victor argues that when he was ordered to stop, his freedom of movement was taken away and he was in custody. "In deciding the custody issue, the totality of circumstances is relevant, and no one factor is dispositive. [Citation.] However, the most important considerations include (1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning." (*People* v. *Boyer* (1989) 48 Cal.3d 247, 272 [256 Cal.Rptr. 96, 768 P.2d 610].)

The trial court's decision there was no custodial interrogation was supported by substantial evidence. (*People* v. *Clair* (1992) 2 Cal.4th 629, 678 [7 Cal.Rptr.2d 564, 828 P.2d 705].) Victor contends the investigation focused on him when Rubio asked about the object. Rubio was investigating a report of several youths throwing rocks at cars. Victor was in a group of youths fitting the description, in the area of the crime, and suspiciously walking toward a housing project as though trying to avoid detection. Rubio stopped the entire group and questioned them all at once. Nothing in the record suggests Rubio specifically thought it was Victor who threw the rocks or that Victor was the focus of his investigation.

He merely recognized Victor as a gang member, discovered an object in Victor's pocket he did not recognize, and asked about it. There were no objective indicia of an arrest.

The length and form of questioning also supports the trial court's decision. After discovering the object, Rubio only asked Victor about its use. Under the circumstances, this limited questioning is typical of a preliminary investigation by a police officer before establishing probable cause for arrest. The questioning was brief and casual, and had not become sustained and coercive. The length and form of questioning did not constitute custody.

Several cases hold a temporary detention which results in preliminary questioning does not require *Miranda* warnings. " 'We conclude that persons

temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive.' [Citation.]" (*People* v. *Carter* (1980) 108 Cal.App.3d 127, 131 [166 Cal.Rptr. 304]; see also *People* v. *Clair*, *supra*, 2 Cal.4th at pp. 679-680; *People* v. *Taylor* (1986) 178 Cal.App.3d 217, 225 [223 Cal.Rptr. 638]; *People* v. *Salinas* (1982) 131 Cal.App.3d 925, 935-936 [182 Cal.Rptr. 683]; *In re Pablo C.* (1982) 129 Cal.App.3d 984, 988 [181 Cal.Rptr. 468].)

Victor's contention that his temporary detention raises a right to *Miranda* warnings is not supported by the law. Carried to its logical end, Victor's approach would require *Miranda* warnings any time an officer speaks to a suspect. The trial court did not err in admitting the statement.

## II

Victor also contends the instrument he carried, as a matter of law, was not a dirk or dagger within section 12020, subdivision (a). Although not yet more specifically defined by the Legislature, " '[a] dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a "pocket-knife." Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing.' [Citations.]" (*People* v. *Pettway* (1991) 233 Cal.App.3d 1067, 1069-1070 [285 Cal.Rptr. 147]; see also *People* v. *Forrest* (1967) 67 Cal.2d 478, 480 [62 Cal.Rptr. 766, 432 P.2d 374]; *In re Quintus W.* (1981) 120 Cal.App.3d 640, 644-645 [175 Cal.Rptr. 30]; *People* v. *Villagren* (1980) 106 Cal.App.3d 720, 725 [165 Cal.Rptr. 470].)

To be classified as a dirk or dagger, an object need not fit the common perception of a knife. Many decidedly un-knife-like objects have satisfied the definition. To be considered a "dirk or dagger" as a matter of law, the court in *Forrest* held the object must have been designed for the primary purpose of stabbing. (*People* v. *Forrest*, *supra*, 67 Cal.2d at p. 481.) In *Forrest*, the defendant used a folding knife with a nonlocking blade. The risk of the blade closing upon the wielder's hand severely limited its effectiveness as a stabbing instrument. Since the knife was not designed primarily for stabbing, it could not be considered a dirk or dagger as a matter of law. (*Ibid.*)

In *People* v. *Cabral* (1975) 51 Cal.App.3d 707 [124 Cal.Rptr. 418], the defendant used a bed spring from his prison cell to make a "handmade knife

or shiv" by straightening out the spring and wrapping shoe laces around one end to create a handle. The court concluded the object was a dirk or dagger as a matter of law because it served no useful purpose other than stabbing. (*Id.* at p. 712.) In *In re Robert L.* (1980) 112 Cal.App.3d 401 [169 Cal.Rptr. 354], the court held that an ordinary unaltered ice pick concealed upon the person was a dirk or dagger as a matter of law because the Legislature intended to prohibit classic instruments of violence as well as their home-made equivalents. (*Id.* at p. 404.)

The only evidence presented here is that the instrument started as a tire repair tool but had been altered to resemble an ice pick or other tool for stabbing.[3] As a tire tool, its primary purpose was to repair tires. But when it was redesigned to have a sharpened point, the trial court was entitled to conclude its primary purpose was to serve as a stabbing instrument.[4] At that point the object became a dirk or dagger within the meaning of section 12020, subdivision (a) because it no longer had any use other than as a stabbing weapon.

Victor contends the object's length precludes its classification as a dirk or dagger. *In re Conrad V.* (1986) 176 Cal.App.3d 775 [222 Cal.Rptr. 552] held an instrument with a blade one and one-half inches long, curved on both sides, and beveled and sharpened on the front, with no handguards to prevent the hand from slipping onto the blade, was not a dirk or dagger. In dicta the court commented that perhaps another requirement of a dirk or dagger would be a blade of a certain length. Noting that section 626.10 prohibits possession on school grounds of a dirk, dagger, or knife with a blade longer than three and one-half inches and that section 653k prohibits possession of a switch blade knife with a blade longer than two inches, the court stated ". . . the Legislature has evidenced an intent not to regulate possession of knives with a blade length under two inches despite the fact such knives are capable of causing great bodily injury or being used as deadly weapons as are many other objects which are capable of being concealed on the person." (176 Cal.App.3d at p. 778.) Victor claims that since the actual shaft of the object is less than two inches, it is not a dirk or dagger.

The statute itself has no length requirement. Many people carry knives with short blades for utility purposes. Such objects are not designed prima-rily for stabbing. Recently, *People* v. *Pettway, supra,* 233 Cal.App.3d 1067

---

[3]The only evidence offered regarding the object's use was Rubio's testimony. Victor did not offer any evidence regarding other possible uses for the object, what the object looked like in its original condition, how it was used as a tire tool, or that he used the tool for tire repair.

[4]Although the object appears to have been designed to be separated into two pieces, once assembled the pieces are difficult to separate. When Rubio found the object on Victor, it was assembled in one piece.

found a weapon with a wedge-shaped two-and-one-quarter-inch blade with a handle and finger grips was a dirk or dagger as a matter of law because it was fitted for no purpose other than stabbing. (*Id.* at p. 1072.) The object here, like that in *Pettway*, features finger grips and serves no other purpose than stabbing.

The circumstances in which the object was found were sufficient to allow the court to conclude the object was a dirk or dagger. (See *People* v. *Grubb* (1965) 63 Cal.2d 614, 621 [47 Cal.Rptr. 772, 408 P.2d 100] [possession of altered baseball bat for use as a weapon was a violation of the statute]; *In re Quintus W.*, *supra*, 120 Cal.App.3d at p. 645 [possession of a concealed steak knife for protection was a violation of the statute]; *In re Robert L.*, *supra*, 112 Cal.App.3d at p. 405 [possession of a concealed ice pick for protection was a violation of the statute]; *People* v. *Villagren*, *supra*, 106 Cal.App.3d at p. 727 [possession of a concealed hunting knife for protection was a violation of the statute]. But see *People* v. *Barrios* (1992) 7 Cal.App.4th 501, 506 [8 Cal.Rptr.2d 666] [possession of concealed bread knife for protection was not a violation of the statute]; *Bills* v. *Superior Court* (1978) 86 Cal.App.3d 855, 862 [150 Cal.Rptr. 582] [possession of concealed barber scissors for use as defensive weapon was not a violation of the statute].) Victor carried the object while hanging around fellow gang members, allegedly throwing rocks at cars, and walking rapidly toward a housing project. None of the facts suggest he was repairing tires. He told police he carried it for protection which, combined with its alteration from its original use, allowed the court to conclude it had no purpose other than stabbing. Under these facts the trier of fact could find the object was a dirk or dagger under section 12020, subdivision (a).

The judgment is affirmed.

Sills, P. J., and Moore, J., concurred.

APPENDIX "A"