Filed 8/21/14  P. v. Fair CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B248658 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA125869) |
| v. | |
| MARY JOHNNICA FAIR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allen J. Webster, Jr., Judge.  Modified and, as so modified, affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jun K. Lee, Stephanie C. Santoro and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Mary Johnnica Fair appeals from the judgment entered following a jury trial that resulted in her convictions for second degree robbery and dissuading a witness. Fair was sentenced to a term of three years in prison. She contends: (1) the evidence was insufficient to support the robbery count; (2) the trial court erred by failing to stay sentence pursuant to Penal Code section 654[1] on the dissuading a witness count; and (3) the trial court abused its discretion in allowing the People to amend the information to add a new charge during trial. The People contend the trial court miscalculated Fair's custody credits, and erred by imposing only a single court security fee and criminal conviction assessment. Fair's second contention and the People's contentions have merit, and we order the judgment modified accordingly. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

The evidence relevant to the issues presented on appeal established the following. On the morning of November 20, 2012, Elvira Hernandez was waiting for her bus at the corner of Century Boulevard and Broadway Street in Los Angeles. When the bus arrived Fair exited. As she did so, she bumped into Hernandez and pushed her. Hernandez said, " 'Why did you push me?' " Fair told her to be quiet, or similar words, and threw a plastic cup of cold liquid with ice at her, hitting Hernandez in the face and getting her wet. Hernandez, who spoke only a little English, said " 'Stupid, . . . why did you wet me?' " in a combination of English and Spanish. Hernandez took out her cellular telephone and said, in English and Spanish, that she was calling police. When Hernandez took out the telephone Fair started hitting her in the head with her fist, and grabbing her hair with the other hand. When Fair started to hit Hernandez, Fair "was saying a lot of things" to Hernandez in English, but Hernandez was "just defending" herself and was too nervous to pay attention to her words. While Hernandez was "speaking to the police,"

---

**1**      All further undesignated statutory references are to the Penal Code.

Fair said, " 'Okay. Go ahead call the police,' " and snatched the cell phone from Hernandez's hand. Fair put the phone in her purse. Once Fair had put the phone in her purse, she stopped hitting Hernandez. Fair walked away at a fast pace. Hernandez did not follow because she was afraid of Fair and thought Fair would hit her again.

Carina Boyette, who had been exiting the bus with her children at the same time as Fair did, witnessed the incident. She summoned police. According to Boyette, Fair got off the bus with a drink in her hand. She started yelling and cursing at Hernandez, and followed her to the stop light at the corner. Hernandez did not say anything. Fair then threw the cup of liquid at Hernandez. Boyette heard Fair say, " 'You're not calling nobody.' " At the same time Fair grabbed Hernandez with one arm and used the other to hit her in the head with her fist six or more times. Fair then walked away, across the street.

Los Angeles Police Department Officer Augustine Hernandez responded to the 911 call. He discovered Fair two blocks away from the bus stop, and another officer found Hernandez's cell phone in Fair's purse. Hernandez identified Fair as the culprit in a field showup, and at trial. She also identified the phone found in Fair's purse as hers.

2. *Procedure.*

Trial was by jury. Fair was convicted of second degree robbery (§ 211) and dissuading a witness (§ 136.1). The jury found true the allegation that Fair used force or the threat of force in commission of the dissuading a witness count to be true. The trial court sentenced Fair to a term of three years in prison. It imposed a restitution fine, a suspended parole restitution fine, a court operations assessment (§ 1465.8, subd. (a)(1)), and a criminal conviction assessment (Gov. Code, § 70373). Fair appeals.

DISCUSSION

1. *There was sufficient evidence to support the robbery conviction.*

Fair contends there was insufficient evidence to prove robbery because her intent to steal the phone arose after her use of force. She is incorrect.

3

When determining whether the evidence was sufficient to sustain a criminal conviction, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Snow* (2003) 30 Cal.4th 43, 66; *People v. Houston* (2012) 54 Cal.4th 1186, 1215.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Medina* (2009) 46 Cal.4th 913, 919.) Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. (§ 211; *People v. Anderson* (2011) 51 Cal.4th 989, 994; *People v. Gomez* (2008) 43 Cal.4th 249, 254.) Theft is a lesser included offense of robbery, which does not require the additional element of force or fear. (*People v. Combs* (2004) 34 Cal.4th 821, 856; *People v. Reeves* (2001) 91 Cal.App.4th 14, 51.) The intent required for robbery is to deprive the victim of property permanently. (*Anderson*, at p. 994.) To support a robbery conviction, the evidence must show that the requisite intent to steal arose either before or during commission of the act of force, and the defendant must apply the force or fear for the purpose of accomplishing the taking. (*Anderson*, at p. 994 [" 'the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal' "]; *People v. Bolden* (2002) 29 Cal.4th 515, 555-556; *People v. Marshall* (1997) 15 Cal.4th 1, 34; *Reeves*, at pp. 52-53.) The requisite forcible act may also be an act committed after the initial taking if it is motivated by the intent to retain the property. (*Gomez*, at p. 265; cf. *Anderson*, at p. 995.) If the intent to take the property arises only after force or fear is applied, the offense is theft. (*People v. Burney* (2009) 47 Cal.4th 203, 253.) The victim's fear may be inferred from the circumstances in which the property is taken. (*People v. Clark* (2011) 52 Cal.4th 856, 944.)

4

Here, the evidence was sufficient to prove Fair intended to permanently deprive Hernandez of her phone, and her intent to take the phone arose either before, or simultaneously with, her use of force. Hernandez testified: "I said 'I call the police' and I took out the phone. That's when she started to hit me." Eyewitness Boyette testified Fair "was saying 'you're not calling nobody.' Then she took one of her arms and then she grabbed the lady with one of her hands and she used the other one to hit her . . . ." The most reasonable inference from the evidence is that Fair's intent to steal the phone arose before, or simultaneously with, her act of hitting the victim and pulling her hair. Fair was discovered with the phone two blocks away from the bus stop, leading to the reasonable inference that she intended to permanently deprive Hernandez of the phone. The evidence was thus sufficient.

Fair's arguments to the contrary are not persuasive. She urges that her "use of force was motivated by her desire to prohibit Hernandez from calling the police, not to steal the phone or take Hernandez's belongings"; that she only started to hit Hernandez *after* Hernandez stated that she was going to call the police; and after she took the phone, she "stopped using force." Rather than proving the evidence was insufficient, this argument has the opposite effect. The evidence described by Fair demonstrates she formed the intent to take the phone, then used force to effectuate the taking, and stopped hitting the victim once her goal was accomplished. As the People point out, Fair apparently confuses intent with motivation. But there is no requirement that the taking be committed for monetary gain. "[M]otive itself is not a necessary element of robbery" (*People v. Clark, supra,* 52 Cal.4th at p. 946), and the "value of the taken property is irrelevant." (*Ibid.*)

2. *Sentence on count 2 should have been stayed pursuant to section 654.*

The trial court imposed the midterm of three years for the robbery (count 1), and a concurrent term of three years for dissuading a witness (count 2). Fair urges that the trial court should have stayed sentence on count 2 pursuant to section 654, because both offenses occurred during a single course of conduct, and were committed with the same intent, to keep Hernandez from calling police. The People concede the point.

5

Section 654, subdivision (a), provides that an act or omission punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but not under more than one provision. Thus, section 654 bars multiple punishments for separate offenses arising out of a single occurrence where all were incident to an indivisible course of conduct or a single objective. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368; *People v. Calderon* (2013) 214 Cal.App.4th 656, 661; *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1264.) When section 654 applies, the court must stay one of the counts, not simply impose concurrent sentences. (*People v. Hernandez* (2005) 134 Cal.App.4th 1232, 1239.)

We agree with the parties that section 654 required a stay of sentence on count 2. From the evidence adduced, the only reasonable conclusion was that Fair had a single intent and objective during the incident, that is, to prevent Hernandez from calling police. Fair's use of force and her taking of the phone were both committed to effectuate this objective. (See *People v. Galvez, supra,* 195 Cal.App.4th at p. 1264 [where victim was robbed of his phone to prevent him from calling police, section 654 precluded punishment for both robbery and witness dissuasion].) Accordingly, sentence on count 2 should have been stayed.

3. *Amendment of the information.*

As originally filed, the information alleged only count 1, robbery. During jury selection, the People sought to amend the information to add the second count of dissuading a witness by force or threat (§ 136.1). Defense counsel objected to the amendment on the ground it was untimely. She also objected that, "had there been a [second count] in play," she would have advised Fair differently during plea negotiations. Consequently, the amendment would result in Fair receiving ineffective assistance of counsel. The prosecutor averred that the new charge was based on the same facts as the original robbery count. The trial court overruled the defense objections and allowed the amendment.

6

Fair contends amendment of the information after trial commenced was an abuse of discretion and violated her due process rights. We disagree.

Under section 1009, the trial court may permit an amendment of an information to add another offense shown by the evidence at the preliminary hearing at any stage of the proceedings.[2] (§ 1009; *People v. Tallman* (1945) 27 Cal.2d 209, 213; *People v. Lettice* (2013) 221 Cal.App.4th 139, 147; *People v. Villagren* (1980) 106 Cal.App.3d 720, 724 [amendment may be made as late as the close of trial if no prejudice is shown].) "Due process requires that a criminal defendant be advised of the charges against him so that he has a reasonable opportunity to prepare and present a defense and not be taken by surprise by evidence offered against him at trial. [Citations.] But a defendant's due process rights are not prejudiced by amendment of the information, and the trial court may permit amendment of the accusatory pleading 'at any stage of the proceeding, up to and including the close of trial,' so long as defendant's substantial rights are not prejudiced." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 554; *People v. Graff* (2009) 170 Cal.App.4th 345, 360.) A trial court's decision whether to permit the filing of an amended information is reviewed for abuse of discretion. (*Lettice*, at p. 147; *People v. Bolden* (1996) 44 Cal.App.4th 707, 716; *Villagren*, at p. 724.)

---

[2]    Section 1009 provides, in pertinent part: "The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, or if the defect . . . cannot be remedied by amendment, may order . . . a new information to be filed. The defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading, if the defendant has not yet pleaded and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

We discern no due process violation or abuse of discretion here. The dissuading a witness count was based on the identical evidence as the robbery charge. Fair therefore had notice of the facts giving rise to the additional count. The case was not complicated, and the amendment was made prior to trial. Both the dissuading a witness and robbery counts involved similar issues, that is, the circumstances under which Fair took the phone. The jury was instructed that to prove a violation of section 136.1, the People were required to prove Fair maliciously tried to prevent, or prevented, Hernandez from making a report that she was a victim of a crime to any police offer; Hernandez was a crime victim; and Fair knew she was trying to prevent, or had prevented, Hernandez from making such a report. (CALCRIM No. 2622; see also *People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347.) Thus, the evidence involved in proving, or refuting, both charges greatly overlapped. The record does not suggest the defense would have needed to marshal different evidence or witnesses to defend against the new charge.

Fair contends that there was insufficient evidence presented at the preliminary hearing to support the new charge of dissuading a witness. (*People v. Winters* (1990) 221 Cal.App.3d 997, 1005.) Specifically, she avers that the prosecutor did not establish Hernandez was prevented from calling the police, or whether Fair understood Hernandez was going to call 911. But, at the preliminary hearing Hernandez testified that after Fair threw the drink on her and Hernandez called her "Stupid," Hernandez took out her cell phone and said, in Spanish, that she was going to call police. Fair responded by screaming, "Go ahead. You call police" and taking the phone. This evidence showed Fair understood Hernandez was calling police, and took the phone to prevent her from doing so. Moreover, defense counsel at the preliminary hearing asked several questions aimed at uncovering whether Hernandez actually told Fair she was calling police, and in what language. Thus, contrary to her contention, the testimony was *not* unclear regarding Fair's knowledge that Hernandez was calling police. " [A] preliminary hearing transcript affording notice of the time, place and circumstances of charged offenses " 'is the touchstone of due process notice to a defendant.' " ' " (*People v. Graff, supra,* 170 Cal.App.4th at p. 367.) That standard was met here.

8

Fair also contends that substantial evidence was presented at trial that did not correspond to the charges established at the preliminary hearing, requiring reversal of count 2.  (See *People v. Graff, supra,* 170 Cal.App.4th at p. 362 ["appellate courts are compelled to reverse convictions where substantial evidence was presented at trial that did not correspond to the charges established at the preliminary hearing"].)  In support, Fair cites *People v. Burnett* (1999) 71 Cal.App.4th 151 and *People v. Dominguez* (2008) 166 Cal.App.4th 858.  In *Burnett,* the information charged an incident in which the defendant possessed a .38-caliber firearm.  At trial, a witness who had not testified at the preliminary hearing described an additional incident, not mentioned at the preliminary hearing, in which the defendant possessed a different type of firearm.  (*Id.* at p. 167.)  The trial court improperly allowed amendment of the information to strike the gun type, leaving open the possibility the defendant could be convicted of firearm possession based on a completely different incident than that shown by the evidence at the preliminary hearing.  (*Burnett*, at pp. 168-171.)  In *Dominguez,* the trial court erred by permitting amendment of the information after the close of evidence to extend the date range within which the crime may have occurred and to allow for an alternative factual scenario not shown by the preliminary hearing evidence.  (*Dominguez*, at pp. 866-867.)

As is readily apparent, the instant case is unlike *Burnett* and *Dominguez.*  The evidence at trial and at the preliminary hearing involved the same witness, the same incident, and the same facts.  Unlike in the cited cases, amendment of the information did not allow the jury to convict based on a different incident than that shown by the evidence at the preliminary hearing.  Contrary to Fair's assertion, our review of the preliminary hearing transcript does not reveal significant differences between the victim's trial and preliminary hearing testimony.

Next, Fair complains she was prejudiced by the amendment.  (See *People v. Superior Court (Alvarado)* (1989) 207 Cal.App.3d 464, 477 ["The focus of the trial court's exercise of discretion in ruling on a motion to amend should be directed primarily to determining whether, on the facts presented, the requested amendment would prejudice [the defendant's] substantial rights"].)

9

Fair argues the amendment prejudiced the defense in three respects. First, she contends defense counsel lacked the opportunity to cross-examine Hernandez at the preliminary hearing in regard to the additional count, in that she had no reason to "ask detailed questions" related "solely to uncharged conduct." Consequently, the defense was handicapped in its ability to impeach Hernandez with her preliminary hearing testimony on the newly added count. However, as we have discussed, the evidence underlying the two crimes was very similar, if not identical, and the proof required tended to overlap. Defense counsel did cross-examine Hernandez at the preliminary hearing regarding her statements about calling police, and Fair's reactions. This line of questioning, along with that regarding the robbery charge, constituted adequate questioning on the dissuading a witness count. Our review of the record does not reveal significant differences in the type of cross-examination that was necessary at the two proceedings.

Second, Fair avers she might have "wanted to change her whole strategy in approaching voir dire" had she had prior notice of the additional charge. We cannot conceive how the new charge might have impelled counsel to conduct voir dire differently, and Fair offers no specific examples.

Third, Fair avers that "because the plea bargain offer made to appellant prior to trial was no longer available . . . once the trial started, defense counsel was no longer able to effectively advise [Fair] of the risks of a jury trial . . . ." Had she known before trial that she would be charged with the additional offense, Fair hypothesizes, she might have accepted a pretrial plea bargain.

When the prosecutor sought to amend, the parties discussed the prior offers and counteroffers made. While the record is not entirely clear, it appears the People made two pretrial offers to Fair, neither of which she found acceptable. One was for a guilty plea to robbery, a "strike," with a two-year term; the other was for a guilty plea to assault, a non-strike, with a three-year term and a waiver of custody credits, which amounted to approximately seven months. Defense counsel believed the crime did not amount to robbery and should not be charged as a strike, and Fair did not want to waive custody

10

credits. The People had refused to modify the second offer to omit the waiver of custody credits. Defense counsel represented that she had spoken with the prosecutor and the second, "nonstrike" offer was no longer available. Nonetheless, at the hearing on the amendment the prosecutor invited defense counsel to make another offer, and the trial court offered to give the parties time to negotiate. Defense counsel declined to do so, opining that further discussions would not be fruitful. She "still [had] the same position with regard[] to the offer and the counter." Counsel explained, "So as far as me . . . coming up with a new offer, it's the same. I still think that a nonstrike offer is warranted in this case. And as far as credits, this isn't someone who's out of custody after warranting. She's been here. So I don't really get the waive back credits . . . ." Defense counsel reiterated that based on her conversations with the prosecutor, a "nonstrike offer would not be given at this stage and that would be all we would be interested in." The prosecutor confirmed that the original two-year offer probably would not change, "especially since we're so far into the trial[,] picking a jury already."

While the parties' conversations are not entirely clear, it appears that appellant remained uninterested in the only plea offers the People had made prior to the amendment. While counsel pointed out that the second, "nonstrike" offer was no longer available, it is unclear at best that she would have advised Fair to accept it, or that Fair would have done so, even had she been aware of the new count. Defense counsel continued to criticize the "nonstrike" offer, and stated her position had not changed. Accordingly, Fair has not demonstrated the amendment prejudiced her in regard to plea negotiations.

Nor did the amendment violate Fair's due process rights. "Due process of law requires that an accused be advised of the charges against him [or her] so that he [or she] has a reasonable opportunity to prepare and present [a] defense and not be taken by surprise by evidence offered at . . . trial. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 317; *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1201; *People v. Fernandez, supra,* 216 Cal.App.4th at p. 554.) "But a defendant's due process rights are not prejudiced by amendment of the information . . . so long as defendant's substantial rights

11

are not prejudiced. (*Fernandez*, at p. 554.) As we have explained, Fair's substantial rights were not prejudiced here. Fair had notice of the facts of the incident. The amendment came at the beginning of trial, when the defense had time to make any adjustments in the defense strategy, especially given the straightforward and relatively simple nature of the case.

*Gray v. Raines* (9th Cir. 1981) 662 F.2d 569, cited by Fair, does not assist her. In *Gray,* the prosecution charged the defendant with first degree, or forcible, rape. Near the close of the evidence the state was allowed to add second degree, or statutory, rape to the charge. Up until that point, Gray's defense had been that the sexual relations had been consensual. After the addition of the new charge, the state used the evidence of consent to obtain a conviction on the statutory rape charge. The Ninth Circuit found the conviction "repugnant to the concept of due process and fundamental fairness." (*Id.* at p. 573.) As is readily apparent, nothing close to this happened in the instant case, and *Gray* has no application here.

4. *Corrections to the custody credit calculation and other fines and fees.*

The People request that we make various modifications to the judgment in regard to custody credits, fees, and fines.

The trial court awarded Fair 157 days of actual custody credit, and 157 days of presentence conduct credit. The People contend the court miscalculated Fair's presentence conduct credits, however, by failing to apply the 15 percent limitation in section 2933.1, subdivisions (a) and (c). We agree. Robbery is listed in section 667.5, subdivision (c) (9) as a violent offense, and therefore Fair's presentence conduct credits are limited to 15 percent, or 24 days. (*People v. Nunez* (2008) 167 Cal.App.4th 761, 764-765; § 2933.1, subds. (a), (c).) We order the judgment modified accordingly. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 [a sentence that fails to award legally mandated custody credit is unauthorized and may be corrected when discovered].)

The People also aver that, because Fair was convicted of two offenses, the court should have imposed two $40 assessments pursuant to section 1465.8 and two $30 assessments pursuant to Government Code section 70373. We agree. A court

12

security fee (§ 1465.8, subd. (a)(1)) and a criminal conviction assessment (Gov. Code, § 70373) apply to each count of which a defendant is convicted.  (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483-484; *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865.)  Because these assessments do not constitute punishment, both must be imposed even on counts that are stayed pursuant to section 654.  (*Sencion*, at p. 484; *People v. Crittle* (2007) 154 Cal.App.4th 368, 370-371.)  We order the judgment modified accordingly.  (*People v. Talibdeen* (2002) 27 Cal.4th 1151, 1157.)

**DISPOSITION**

The judgment is modified as follows. Sentence on count 2 is stayed pursuant to Penal Code section 654. Fair is awarded 24 days of presentence conduct credit, not 157, for a total of 181 days. The court security fee imposed pursuant to section 1465.8 is increased to $80. The criminal conviction assessment imposed pursuant to Government Code section 70373 is increased to $60. The Clerk of the Superior Court is directed to prepare a corrected abstract of judgment and forward it to the Department of Corrections. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


KLEIN, P. J.



KITCHING, J.


14