722

THE PEOPLE, Respondent, v. SYED SHAH, Appellant.

Kenneth Carlton Zwerin for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, Edmund G. Brown, District Attorney, and William B. Acton, Assistant District Attorney, for Respondent.

WARD, J.—Defendant appeals from a judgment of conviction of assault with a deadly weapon and from an order denying a new trial. The information in two counts charged assaults on different parties. The jury failed to reach a verdict on the first count. The second count is the basis of this appeal, and alleges an assault with a deadly weapon upon one Walter Szajna.

It is claimed that the court erred in permitting the testimony of an absent witness to be read as a deposition. It is also urged that the court committed error in giving and refusing to give certain instructions.

Testimony taken before a committing magistrate may be read if the trial court is satisfied that the witness cannot, after due diligence, be found within the state. (Pen. Code, § 686, subd. 3.) It is defendant's contention that "no competent legal evidence was introduced" to show that Szajna was not in the state. It appears that Szajna was in the state on previous dates when the case had been set for trial, but was continued, at the district attorney's suggestion, on account of a crowded calendar. Defendant does not claim that it was possible to try the case on the previous dates. Szajna was definitely placed in Chicago a short period before the trial.

The words "due diligence" as used in Penal Code, section 686 need not be proved by "legally competent" evidence as defendant claims, but by "satisfactory evidence."

"Deposition" and a "preliminary examination" before a committing magistrate are often used interchangeably. However, "deposition" in the section specifically refers to the testimony of a witness who probably will be unable to be present at the trial and whose testimony is taken conditionally in the presence of the defendant and read at the trial, if the witness does not appear in person. The transcript of the testimony of a witness given in the presence of the defendant and to whom there has been given an opportunity to cross-

examine at the preliminary hearing may likewise be used as evidence "upon its being satisfactorily shown to the court that he . . . cannot, with due diligence, be found within the state."

A number of citations are presented by each side, but they are of little assistance, as in each opinion the facts of the case and the activity of officials or attorneys are considered as applicable to the particular case. Unless there is an abuse of the discretion used by a trial judge, reviewing courts will not interfere. In the present case it does not appear that any official was derelict in failing previously to subpoena Szajna, and the issuance of a subpoena from San Francisco, California, to Chicago, Illinois, would have been a futile act. The record does not indicate that on the point raised the defendant was deprived of a substantial right.

The court instructed: "A deadly weapon is any objection, instrument or weapon which, used in the manner in which it appears to have been used, is capable of producing, and is likely to produce, death or great bodily injury." The word "objection" may be assumed to mean "object." The instruction was condemned in *People* v. *Simpson*, 87 Cal.App.2d 359, 362 [196 P.2d 933] upon the theory that it assumed that a deadly weapon was used. In the present case defendant admitted he used a hammer on Szajna. The latter testified he was hit four times—once on the head. The record discloses that the instrument is designated as a "Vulcan Ball Face hammer." There was no contention during the trial, and there is no contention on appeal, that it is not a deadly weapon. The attorney general states: "It was introduced in the evidence as Exhibit 1, and it obviously appeared as a deadly weapon to the jury when used in the manner indicated by the testimony of the complaining witness." In defendant's brief no further objection or reply of any kind is made.

The court refused to give the following instructions: "You are instructed that under the law, a person may act upon appearances; the rule being that a person may have a lively apprehension that he is in imminent danger and believe that his apprehension is based on sufficient cause and is supported by reasonable grounds, and that such apprehension is reasonable and warranted from appearances as they present themselves to him. If, however, he acts on these appearances, he does so at his own peril since the law leaves it to no man to be the exclusive judge of the reasonableness of the appearances upon which he acts but prescribes a standard of its own, which

is, that not only would the person acting on appearances himself believe that he was in deadly peril or in danger of great bodily injury, but would a reasonable man situated as the defendant was, saw what he saw, and knowing what he knew, be justified in believing himself in such danger. The jury is not to consider whether or not the defendant was, when the complaining witness was injured, in actual peril or danger, but only to consider whether the indications or appearances were such as to induce the defendant as a reasonable man into believing that he was in such danger or peril. If you, therefore, find that the defendant SYED SHAH believed reasonably that he was in such peril or danger and that the complaining witness was injured under such belief, even though it should appear that the complaining witness was unarmed, I instruct you that you should acquit the defendant." Also: "I instruct you that you give such weight as you deem proper to all of the circumstances surrounding the commission of an assault in determining to what extent, or if at all, they operated as mitigating circumstances."

In *People* v. *Vezerian*, 85 Cal.App.2d 708 [193 P.2d 944], it was held to be error to refuse an instruction similar to the first one quoted, but only because of the cumulative effect of the refusal, coupled with refusal to give other instructions. The second instruction is based on language covering "circumstances in mitigation" used in the opinion in *People* v. *Wells*, 10 Cal.2d 610 [76 P.2d 493]. In the Vezerian case and in the Wells case, the questions arose as to how far a person may act upon appearances and what constitutes mitigation or excuse. A defendant's conduct is not to be judged on the basis of what the circumstances appear to be to him, but on how a reasonable person would act under the same circumstances.

█ Assuming that the instructions were requested entirely upon the theory of self-defense, it appears that they were covered by other instructions, although not in the precise, but in similar language. The instructions given sufficiently covered the subject matter. "The kind and degree of force which a person may lawfully use in self-defense are limited by what a reasonable person in the same situation as such person, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that he is acting, and may act, in self-defense, he is not justified in

using a greater degree of force than that permitted by the rule just stated to you. Thus, although one has been unlawfully attacked, he may not in the name of self-defense inflict further or any injury upon an erstwhile assailant after danger from the assailant no longer exists, as the situation would appear to a reasonable man in the same position. The rule of self-defense does not authorize one to seek revenge or to take into his own hands the punishment of an offender.''

Finally, defendant complains that the language used in a circumstantial evidence instruction is not in the precise language adopted in *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8]. The vital issue in this case was not dependent upon circumstantial evidence, and hence instructions on that subject were not necessary. (*People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Harmon,* 89 Cal.App.2d 55 [200 P.2d 32].) The instruction is not quoted in defendant's brief, but appears in the transcript. Assuming that such an instruction might well have been given, "However, in view of the constitutional rule (art. VI, § 4½) that 'No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error . . . has resulted in a miscarriage of justice,' it does not necessarily follow that the failure to state the principle in substantially the language above quoted will be ground for reversal.'' (*People* v. *Bender, supra,* p. 176.)

The judgment and the order denying defendant's motion for a new trial are affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 24, 1949, and appellant's petition for a hearing by the Supreme Court was denied June 2, 1949. Carter, J., Traynor, J., and Schauer, J., voted for a hearing.