[Civ. No. 43946. First Dist., Div. Three. Nov. 30, 1978.]

RAY ANTHONY BILLS, Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Isenberg, Moulds, Samuel & Rodda and Rosemary Metrailer for Petitioner.

No appearance for Respondent.

Evelle J. Younger and George Deukmejian, Attorney Generals, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, Thomas A. Brady and Laurence K. Sullivan, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**WHITE, P. J.**—Petitioner, Ray Anthony Bills, was arrested in the City of Fairfield on Januray 20, 1978, sometime after midnight. After his preliminary examination, petitioner was held to answer the information accusing him of a "Violation of Section 12020 of the Penal Code of California" in that he "did willfully, unlawfully and feloniously possess an instrument or weapon of the kind commonly known as a pair of scissors." Petitioner's motion to set aside the information (Pen. Code, § 995) was denied. We stayed petitioner's imminent jury trial and issued an alternative writ of prohibition to address the question of whether a pair of scissors constitutes a dirk or dagger or any other instrumentality within the purview of Penal Code section 12020. We have decided that an unaltered pair of barber scissors is not a "dirk or dagger" because it is not a weapon fitted primarily for stabbing. Accordingly, we issue the peremptory writ of prohibition.

Shortly after midnight on January 20, 1978, Officers Colonbomi and Fernandez of the California Highway Patrol were transporting a prisoner. As was their custom, they traveled Highway No. 80. Officer Colonbomi drove off the freeway into Fairfield to get gas for the car he was driving. As he left the freeway, Colonbomi observed petitioner standing on the left side of the road. As the police car returned on Travis Boulevard to the freeway, petitioner was again observed by Colonbomi. Approximately two or three minutes later, after the police car had returned to the freeway, Colonbomi heard a police communication transmitted from the

Fairfield Police Department that four black males had "skipped out" on a cab fare in the City of Fairfield. At the preliminary hearing, Officer Colonbomi testified that the communication gave a description of the suspects as four individuals, all black males, one with a pullover watch cap and some type of backpack.

Officer Colonbomi testified at the preliminary hearing that the Fairfield Police Department broadcast related that the petty theft took place off Travis Boulevard approximately 10 to 15 minutes prior to his observing defendant.

Upon hearing the communication, Colonbomi radioed to see if any other officers were closer to the location; when the call was not answered, Colonbomi and Fernandez turned around and returned to stop petitioner. Contact with petitioner was made near the Travis Boulevard exit from the freeway.

Colonbomi stopped petitioner and asked him for identification. Petitioner produced a driver's license. As this was taking place, California Highway Patrol Officers Nolan and Felter arrived. Officer Colonbomi turned the investigation over to Felter who ran a radio check on petitioner with the identification. As Colonbomi was standing near petitioner, he observed some metallic object in petitioner's right glove. The observation of the metallic object was made approximately within one minute after Colonbomi first observed petitioner. Colonbomi asked petitioner to take his gloves off. As soon as the gloves came off, Colonbomi recognized the metallic object to be a pair of scissors.

Shortly after that, the warrant check indicated that there was an outstanding warrant from Oakland on petitioner, with $85 bail for violation of Vehicle Code sections 4454, registration card in vehicle, 5204, registration tab for car license, and 12815, license lost or destroyed. The warrant indicated "Day serve only." Petitioner was then arrested.

We are in agreement with the parties herein that subdivision (a) is the only relevant provision. Penal Code section 12020, subdivision (a) reads in pertinent part: "Any person in this state . . . who carries concealed upon his person any dirk or dagger, is guilty of a felony, and upon *conviction shall be punishable* by imprisonment in the county jail not exceeding one year or in a state prison . . . ."

The code does not define "dirk or dagger." ■ In six appellate decisions we find this quote: "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)" (*People* v. *Ruiz* (1928) 88 Cal.App. 502, 504 [263 P. 836]; *People* v. *Bain* (1971) 5 Cal.3d 839, 851 [97 Cal.Rptr. 684, 489 P.2d 564]; *People* v. *Forrest* (1967) 67 Cal.2d 478, 480 [62 Cal.Rptr. 766, 432 P.2d 374]; *People* v. *Cabral* (1975) 51 Cal.App.3d 707, 712 [124 Cal.Rptr. 418]; *People* v. *Ferguson* (1970) 7 Cal.App.3d 13, 18 [86 Cal.Rptr. 383]; *People* v. *Shah* (1949) 91 Cal.App.2d 716, 720 [205 P.2d 1077].)

The weapon in *Ruiz* was a filed down bayonet enclosed in a metal sheath resembling a dagger in every detail except that a dagger is more pointed and not so heavy. In *Shah*, a seven-inch-long switch blade pocketknife with the blade locked in place until released by a button, was held to be a dirk or dagger. *Forrest* involved an oversized two-bladed pocketknife with pointed tips. Because it was not primarily designed for stabbing in that the blades did not lock in place, Peters, J., held the knife was not a dirk or dagger as a matter of law. In *Ferguson,* the defendant was carrying an ordinary wooden handled kitchen knife with an eight-inch-long steel blade with a point and one cutting edge. The court reasoned that because the butcher knife had the characteristics of a stabbing and cutting weapon, a jury properly determined that the defendant was armed with a dirk or dagger at the time of a burglary. In *Bain,* Peters, J., reasoned that a jury question was presented by a folding knife with a blade pocketed in the open position. The pointed five-inch long blade had dull beveled sides, the blade locked into place when manually opened, preventing the hand from slipping onto the blade when used as a stabbing weapon. It was held to be a close question of fact whether the knife was a "dirk or dagger." Finally, in *Cabral,* it was held as a matter of law that a jail hand made an eight-and-one-half-inch-long piece of rigid wire with a sharpened point, a three-and-one-fourth-inch handle fashioned from shoestrings was a "dirk or dagger." It resembled a homemade ice pick made from a bedspring.

In the instant case we are concerned not with a knife but a pair of unaltered barber scissors. In his testimony at petitioner's preliminary

hearing the detecting officer described them as "long shaped type closed scissors, the barber type with the hook on the end where you can get a little leverage."

The Attorney General accurately argues that the *Ferguson* court reaffirms the principle derived from the *Ruiz* and *Shah* cases that the test of a "dirk or dagger" is its capability for use as a stabbing weapon. We have certainly had no difficulty in recognizing that a pair of barber scissors is capable of being used as a stabbing weapon and as such could inflict a fatal wound. However, it does not appear to us that a pair of barber scissors as constructed has the characteristics of a stabbing weapon. In *People* v. *Forrest, supra,* 67 Cal.2d 478, 481, the Supreme Court held that the absence of a lock on a folding blade was a characteristic which would substantially limit its effective use as a stabbing instrument. The court reasoned that because it could not hold that an oversized folding pocketknife is a weapon primarily designed for stabbing, it concluded as a matter of law that the admittedly lethal weapon was not a dagger or dirk. The *Forrest* court reasoned that a pocketknife with an unlocked open blade was severely limited as a stabbing weapon because if the blade struck a solid like a bone, there was a grave danger that the blade would close on the wielder's hand; thus, it was not designed primarily for stabbing. While we are not particularly struck with the *Forrest* court's reasoning in the light of common experience, we do find the "primarily designed test" persuasive. In our view, there is no contradicting the fact that a pair of barber scissors is not designed primarily for stabbing. True, reasonable minds will differ, never to agree on whether a pair of barber scissors would make an effective stabbing instrument, bone or no bone. However, as the *Forrest* court anticipated and we quote: ". . . the fact that the weapon can be used as a stabbing weapon and is capable of inflicting death is not determinative. Most knives, or even most pointed scissors, can be used to stab and are capable of inflicting death." (At p. 481.) The Attorney General's opposition brief suggests with some merit that the teachings of *Forrest* direct that before we hold a pair of scissors is not a dirk or dagger as a matter of law, we must be able to point to a characteristic of scissors which would substantially limit stabbing effectiveness. We reject this approach. *Forrest* also teaches and we quote further: "Knives are ordinarily designed to be used as weapons or tools or both, and as weapons they may be designed as stabbing or cutting instruments or as both." (At p. 481.) In our view, logic does not dictate that we attempt a parallel between a pocketknife with blades that do not lock in place and barber scissors. Obviously,

scissors are never designed as weapons; they are designed only for use as a cutting tool. They are not fitted primarily for stabbing.

We can recall some instances wherein scissors served as a rather effective, if not lethal, defensive instrument. Further, we are not so young that we cannot recall the days when our mother's long hat pin served a dual purpose on street cars and the like. We cannot hold that the concealed possession of scissors is a crime unless the Legislature has so provided. We have concluded that Penal Code section 12020 does not embrace a pair of unaltered barber scissors.

The Attorney General argues what is known as the *Grubb* principle that an instrument manufactured for a peaceful purpose will be classified as a weapon within the meaning of section 12020 if the circumstances indicate it is being carried as a weapon. (See *People* v. *Ferguson, supra,* 7 Cal.App.3d 13, 19.)

*People* v. *Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100], is misperceived by the Attorney General. *Grubb,* of course, held that the possession of an altered baseball bat, taped at one end, heavier at the unbroken end, carried about in a car usable as a billy was a violation of that portion of section 12020 that proscribes the possession of any instrument or weapon " 'of the *kind* commonly known as a billy.' " (At p. 621.) The *Grubb* court in construing the legislative design and purpose in enacting section 12020 concluded that the statute embraces instruments other than those specially manufactured for criminal purposes and "decrees as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger." (At p. 621.)

The Attorney General would have us apply the *Grubb* principle to petitioner's scissors because at the preliminary examination Officer Colonbomi testified that upon observing the scissors he inquired, "What's that." Petitioner replied, "It's a weapon to be used for my protection." We decline to so apply. We perceive the *Grubb* principle to be limited specifically to those objects "of the *kind* commonly known as a . . . ." (Pen. Code, § 12020; italics added.) It is noteworthy that the *Grubb* court at page 620 asserts, "The Legislature obviously sought to condemn weapons common to the criminal's arsenal; it meant as well 'to outlaw instruments which are ordinarily used for criminal and unlawful purposes.' [Citations.]" Moreover to the point, in *People* v. *Bain, supra,* 5 Cal.3d 839, 850, the Supreme Court instructs that the term " 'dirk or

dagger' " is to be strictly construed. Peters, J., further reasoned that "In view of the possible greater punishment for concealed possession of a dirk or dagger, it would *not* seem reasonable to conclude that the Legislature used those terms broadly." It is our view that strict construction and common sense mandate that an unaltered pair of barber scissors is not a "dirk or dagger" common to the criminal's arsenal.

■ Finally, the Attorney General argues that petitioner's admission that he intended to use the scissors as a defensive weapon presents a question of fact for a jury, i.e., under the circumstances of whether or not the scissors were a dirk or dagger proscribed by section 12020. The Attorney General's argument is not totally void of merit and finds supporting authority in the dissent by Mosk, J., in *People* v. *Forrest, supra,* 67 Cal.2d 478, 482. But, the early case of *People* v. *Shah, supra,* 91 Cal.App.2d 716, 719, makes it clear that the intended use of the instrument or weapon is immaterial to charged offenses under Penal Code section 12020. The section proscribes certain weapons as contraband. While the above cited cases clearly demonstrate that some knives present a question of fact for a jury as to whether they are a "dirk or dagger," not so as regards an unaltered pair of barber scissors. We can only repeat that while some knives may be, ordinarily barber scissors are not primarily fitted as a stabbing instrument.

We find the court erred in denying petitioner's motion to dismiss pursuant to Penal Code section 995. Let a writ of prohibition issue ordering the respondent superior court to refrain from any further action in petitioner's herein pending criminal prosecution save and except dismissing the same.

Feinberg, J., and Halvonik, J., concurred.

A petition for a rehearing was denied December 29, 1978, and the opinion was modified to read as printed above. Feinberg, J., was of the opinion that the petition should be granted. The petition of the real party in interest for a hearing by the Supreme Court was denied February 28, 1979.