[Crim. No. 38633. Second Dist., Div. Five. June 18, 1981.]

In re QUINTUS W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
QUINTUS W., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Ernest Martinez, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—Quintus W. appeals from a juvenile order of wardship (Welf. & Inst. Code, § 602) upon a finding that he was guilty of carrying upon his person a dirk or dagger in violation of Penal Code section 12020, subdivision (a), a misdemeanor. The court ordered that appellant may not be held in physical confinement for a period to exceed one year and that he was to be placed on home probation in his mother's home. He appeals, contending (1) that the kitchen knife found on his person was not a "dirk or dagger" within the meaning of Penal Code section 12020; (2) that his extrajudicial statements regarding his intended use of the kitchen knife were immaterial and should have been excluded; (3) that his extrajudicial statements were improperly admitted since the corpus of the crime was not independently proven; and (4) that the minute orders must be modified to reflect that the court found the offense to be a misdemeanor.

At approximately 3:30 p.m., on May 5, 1980, Officer Voge saw appellant writing on the wall of a building and stopped his police car. Appellant looked in the officer's direction, then began to walk away. Voge told appellant to stop and place his hands behind his neck. (It was stipulated that the officer had probable cause to detain appellant and reasonable cause to conduct a search.) During a pat-down search, the officer recovered from appellant's right rear pocket a white handled steak knife with a blade four and five-eighths inches long. As the knife was taken from him, he said, "Hey, man, that's my knife. I carry it for protection. There are some dudes trying to jack me up."

Appellant argues that the trial court erred in finding that "the un-altered kitchen knife" was a "dirk or dagger" within the meaning of Penal Code section 12020.

Although the code does not define "dirk or dagger," the courts have provided a general definition which has been consistently followed. In *Bills* v. *Superior Court* (1978) 86 Cal.App.3d 855, 859 [150 Cal.Rptr. 582], the court noted: "In six appellate decisions we find this quote: 'A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a "pocketknife." Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)' [Citations.]"

As appellant correctly points out, not every knife is "a dirk or dagger." However, that determination is a question for the trier of fact to determine. (*People* v. *Bain* (1971) 5 Cal.3d 839, 851 [97 Cal.Rptr. 684, 489 P.2d 564].)

In his argument, appellant incorrectly seizes upon and emphasizes that portion of the definition which states: "They may consist of any weapon fitted primarily for stabbing;" converts the permissive word "may" into the mandatory word "shall;" magnifies the use of the word "primarily" and asserts that the "logical and reasonable test" of a dirk or dagger must be "whether it is a weapon *designed primarily* for stabbing."

The prevailing definition, relevant to knives, is that a dagger is any *straight* knife to be worn on the person which is capable of inflicting death, except the pocketknife. (See *People* v. *Bain, supra*; *People* v. *Shah* (1949) 91 Cal.App.2d 716, 720 [205 P.2d 1081] [seven-inch spring-blade knife was a dagger because blade locked in place]; *People* v. *Ruiz* (1928) 88 Cal.App. 502, 504 [263 P. 836] [partially filed bayonet was a dagger].) *Bain* involved a folding knife with a pointed five-inch-long blade with dull beveled sides that could be locked into position when opened manually. Because the knife could be folded, and because a pocket knife is not a dirk or dagger, the court held it to be a close question of fact whether the knife was a dirk or dagger. In *People* v. *Ferguson* (1970) 7 Cal.App.3d 13 [86 Cal.Rptr. 383], the court held that an ordinary kitchen butcher knife, having a wooden handle and an

eight-inch blade, had the characteristics of "a stabbing and cutting weapon," and thus, the determination of whether it was a dirk or dagger was properly left for the jury to determine. The court in *People* v. *Villagren* (1980) 106 Cal.App.3d 720 [165 Cal.Rptr. 470], also held that the jury properly found that a "hunting knife" with a four and three-eighths inch-long relatively straight blade was a dirk or dagger.

In *In re Robert L.* (1980) 112 Cal.App.3d 401, 404 [169 Cal.Rptr. 354], the court, in concluding that the trial court was justified in its determination that an ice pick fell within the statutory proscription, relied upon principles set forth in *People* v. *Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100], wherein it was observed that "The Legislature's understandable concern with the promiscuous possession of objects dangerous to the lives of members of the public finds manifestation in section 12020. . . . [¶] . . . The Legislature here sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose. [Citation.] [¶] Thus we hold that the statute embraces instruments other than those specially created or manufactured for criminal purposes; . . . ." (*Id.* at pp. 620-621.)

In contrast, in *People* v. *Forrest* (1967) 67 Cal.2d 478 [62 Cal.Rptr. 766, 432 P.2d 374], it was held that an oversized two-bladed pocket-knife was not a dirk or dagger as a matter of law because the blades did not lock into place, thus severely limiting its effectiveness as a stabbing instrument. And in *Bills* v. *Superior Court, supra*, 86 Cal.App.3d 855, the court concluded that a pair of unaltered barber scissors could not be a dirk or dagger because "scissors are never designed as weapons [but] . . . only for use as a cutting tool" and they "are not fitted primarily for stabbing." (*Id.* at p. 861.) *Bills* recognized that a pair of barber scissors could be used as a stabbing weapon and as such could inflict a fatal wound. However, "a pair of barber scissors *as constructed*" does not have "the characteristics of a stabbing weapon." (Italics added.) (*Id.* at p. 860.)

■ Thus, it appears from an examination of the above cases that, depending on their characteristics and capabilities for stabbing and cutting, some objects present a question of fact as to whether they are a

"dirk or dagger," whereas others are considered a "dirk or dagger" as a matter of law.

Here, appellant had concealed on his person in his back pocket a kitchen knife with a blade that was four and five-eighths inches long. Clearly, this had the characteristics of a stabbing and cutting weapon and could be capable of inflicting a fatal wound. (See *People v. Villagren, supra,* 106 Cal.App.3d 720, 727; *People v. Ferguson, supra,* 7 Cal.App.3d 13, 19.) At the time the officer found the knife appellant stated "Hey, man, that's my knife. I carry it for protection. There are some dudes trying to jack me up." As the court concluded in *In re Robert L., supra,* 112 Cal.App.3d 401, 405, "Nothing further was necessary to show the instrument though 'conceived for peaceful purposes, ... was wrapped in the indicia and circumstance of probable assault.' (*People v. Grubb, supra,* 63 Cal.2d 614, 622; ....)"

■ Contrary to appellant's contention, appellant's statement to the officer, "Hey man, that's my knife. I carry it for protection ...." was material to show that appellant carried the knife knowingly and with the intent to use it for a "dangerous ... purpose." (*People v. Grubb, supra,* 63 Cal.2d at p. 620; *In re Robert L., supra,* 112 Cal.App.3d 401, 405.) Although *Shah* stated the actual intent to use a knife as a deadly weapon is immaterial to the offense charged, the court also held that "[e]vidence as to knowledge of [the knife's] nature and character would be admissible to show that carrying the weapon concealed was not justifiable or excusable." (91 Cal.App.2d 716, 719.)

Defendant also contends that his extrajudicial statements were erroneously admitted prior to the establishment of the corpus delicti of the crime. The record shows, however, that the corpus delicti had been established. Only "rather slight or prima facie proof" is necessary to establish the corpus delicti necessary before admission of a confession. (*People v. Mehaffey* (1948) 32 Cal.2d 535, 545 [197 P.2d 12].) Here, appellant was found to have a steak knife concealed in his back pocket. He was not eating or near a restaurant. Depending on the circumstances in which this knife was possessed, it could be a "dirk or dagger" within Penal Code section 12020. Thus, the prosecution had established the corpus delicti before appellant's statements were admitted.

Appellant is correct in his contention that the minute order of July 21, 1980, erroneously reflects that the offense was a felony and the minute order of August 18, 1980, fails to reflect that the offense was

specifically declared by the court to be a misdemeanor. In fact, the offense had been charged as a misdemeanor.

The minute order of July 21, 1980, is modified by striking therefrom the following words "The offense is a felony" and by adding thereto "The offense is a misdemeanor." The minute order of August 18, 1980, is modified to reflect that the offense was declared to be a misdemeanor. In all other respects, the order is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1981. Kaus, J., did not participate therein.